J-A16017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ARTHUR MONTGOMERY AND BARBARA J. MONTGOMERY, HUSBAND AND WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellees | |
| v. | |
| R. OIL & GAS ENTERPRISES, INC., | |
| Appellant | No. 1164 WDA 2015 |

Appeal from the Judgment Entered July 1, 2015
In the Court of Common Pleas of Venango County
Civil Division at No(s): Civil No 392-2014

BEFORE:  SHOGAN, OLSON and STRASSBURGER,* JJ.

DISSENTING MEMORANDUM BY OLSON, J.:          **FILED MARCH 17, 2017**

I believe that the trial court lacked subject matter jurisdiction over this case because the Montgomerys failed to join Quaker State, an indispensable party.  Therefore, I would vacate the trial court's judgment.  Accordingly, I respectfully dissent.

As the learned Majority lucidly sets forth the relevant factual background and procedural history of this case, I turn to why I believe that the Lease is not vertically severable.  In other words, I believe that the oil and gas estate above the Formation is not severable from the oil and gas estate below the Formation.

No express language in the Lease addresses whether the agreement is entire or severable.  Nonetheless, principles of construction indicate that the

* Retired Senior Judge assigned to the Superior Court

Lease is not vertically severable. Specifically, nowhere in the Lease is the word "Onondaga" mentioned. Instead, the Lease only speaks to the entirety of the oil and gas estate below the earth's surface. The word "Onondaga" was not relevant to the Lease until 16 years after its execution when Quaker State reserved to itself and its successors and assignees all oil and gas rights found below the Formation. There is nothing in the Lease that indicates that the MacDonalds and Quaker State, at the time the Lease was signed, viewed the area above the Formation differently from the area below the Formation. *Cf. Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004) (citation omitted) ("It is a fundamental rule of contract interpretation that the intention of the parties at the time of contract governs[.]"). No terms of revenue or consideration turn on generation of oil and gas from the area above the Formation as opposed to the area below the Formation. To the contrary, the Lease addresses as a whole the entirety of the oil and gas estate below the surface lands of the 240 acres covered by the Lease.

The learned Majority focuses on the parties' conduct in concluding that that lease is vertically severable. *See* Majority Memorandum at 9. I find this reasoning unpersuasive for two reasons. First, the Majority's holding permits one party to unilaterally determine that a lease is severable. Under the Majority's rationale, if the lessee assigns a portion of its rights, the lease is severable. Our Supreme Court has held that it is the parties' **mutual**

actions that must be considered when determining if a lease is entire or severable - not a party's unilateral actions. **See Jacobs v. CNG Transmission Corp.**, 772 A.2d 445, 452 (Pa. 2001). In this case, the Montgomerys and their predecessors were not involved in the assignment of Quaker State's rights to the area above the Formation. Thus, I do not believe that the parties' conduct indicates that the Lease is vertically severable.

Moreover, the learned Majority's rationale conflicts with this Court's holding in **Loughman v. Equitable Gas Co., LLC**, 134 A.3d 470 (Pa. Super. 2016). In **Loughman**, the oil and gas lease included both production and storage rights. Thereafter, the lessee assigned its production rights to a third-party and retained the storage rights. The successors of the original lessor filed suit arguing that the production and storage rights under the lease were severable. In support thereof, the plaintiffs argued that the assignment of the production rights by the lessee indicated that the production and storage rights were severable. This Court rejected that argument and held that the production and storage rights were not severable. **See Loughman**, 134 A.3d at 476. Under **Loughman**, a lessee's assignment of a portion of its rights under a lease does not prove that the lease is severable. In the case *sub judice*, it means that the Lease is not severable with respect to the area above and below the Formation. As noted above, I believe that the remaining **Jacobs** factors indicate that the Lease is

not vertically severable. Accordingly, I would conclude that the Lease is not vertically severable.

Having determined that Area A is not severable from Area B, I next consider whether Quaker State has a right or an interest related to the Montgomerys' claim. The trial court concluded that Quaker State does not have such a right or interest because the Montgomerys' prayer for relief did not seek termination of Quaker State's interest in Area B. I would conclude that this determination was legally flawed because whether or not the Montgomerys sought such termination, the effect of the trial court's order was termination of that interest.

Because the Lease is not vertically severable, it necessarily follows that Quaker State has an interest related to the Montgomerys' claim. The trial court found that Appellant's predecessor abandoned the Lease because "wells on that property have not been produced at any time after the year 2001." Trial Court Opinion, 6/30/15, at 12. In concluding that Appellant lost the oil and gas rights to Area A, the trial court necessarily found that Appellant and Quaker State abandoned Areas A and B respectively. If Appellant and Quaker State abandoned Areas A and B respectively, then both Appellant and Quaker State lost the oil and gas rights to Areas A and B

respectively.[1]  Thus, Quaker State has a right or interest to the subject matter of this litigation.

As noted above, the issue before this Court is whether Quaker State can retain a valid interest in its oil and gas estate located in Area B if Appellant's rights and interest in Area A terminated through abandonment. Owing to the fact that the Lease is not vertically severable, the order invalidating Appellant's rights and interest in Area A automatically terminated Quaker State's interest in Area B.  Therefore, justice cannot be afforded without violating Quaker State's right to due process.  Quaker State may not have abandoned Area B.  Nonetheless, its rights have been terminated by the trial court's action.

My opinion that Quaker State is an indispensable party is consistent with our Supreme Court's decision in **North Star Coal Co. v. Waverly Oil Works Co.**, 288 A.2d 768 (Pa. 1972).  In that case, North Star filed an action to declare that lack of oil and gas production at the subject property terminated a lease between the predecessors of both parties.  Waverly, however, only possessed the oil and gas rights to the "shallow sands."

---

[1] The trial court focused on abandonment in its decision granting the Montgomerys judgment on the pleadings and the learned Majority affirms on this basis.  I express no view on whether such an abandonment inquiry is appropriate under the specific facts of this case.  Instead, I focus on abandonment because if the trial court terminated Appellant's rights to Area A on abandonment grounds then it necessarily follows that it terminated Quaker State's interest in Area B because the areas are not vertically severable.

Pennzoil, a non-party to the litigation, had the oil and gas rights to the "deep sands." Our Supreme Court held that Pennzoil was an indispensable party to the action and thus the trial court lacked subject matter jurisdiction over the dispute between Waverly and North Star. *See id.* at 771.

The Montgomerys and the trial court attempt to distinguish *North Star* by noting that North Star sought termination of the entire lease while the Montgomerys' complaint only requested termination of Appellant's rights as to Area A. I agree that this is an important factual distinction; however, this factual distinction only matters if the Lease is vertically severable. If the Lease was vertically severable and the Montgomerys sought only termination of Appellant's interest in Area A, then Quaker State may not be an indispensable party. As noted above, however, I believe the Lease is not vertically severable and therefore the termination of Appellant's interest in Area A necessarily terminates Quaker State's interest in Area B. As such, I believe Quaker State is an indispensable party to this litigation and without its joinder the trial court lacked subject matter jurisdiction over this dispute.

I respectfully dissent.